## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Conceivex, Inc.,

                Plaintiff,      Case No. 16-11810

v.                            Judith E. Levy
                              United States District Judge

Rinovum Women's Health, Inc.,
Rinovum Women's Health, LLC,    Mag. Judge Elizabeth A. Stafford
and The Stork IB2C, Inc.,

                Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND [61, 63] AND DENYING PLAINTIFF'S RENEWED MOTION TO CONSOLIDATE [62]

Before the Court are plaintiff Conceivex, Inc.'s motion to amend the complaint (Dkts. 61, 63) and renewed motion to consolidate this case with its copyright infringement suit against the same corporate entity defendants, Case No. 15-cv-14239. (Dkt. 62.)

For the reasons set forth below, plaintiff's motion to amend is denied, and the renewed motion to consolidate is denied.

## I.    Background

This case arises out of defendants' alleged infringements of plaintiff's patent and trademark related to its prescription CONCEPTION KIT.  Plaintiff alleges that defendants sold an over-the-counter version of its conception kit called The Stork OTC Home Conception Device, and that the device infringed on plaintiff's `493 patent.  Further, the device allegedly infringed plaintiff's trademark in various ways, including through the use of CONCEPTION KIT as a meta tag on defendant's website and as a mark in online advertisements.

The complaint was filed on May 20, 2016, and plaintiff filed its first amended complaint on June 8, 2016. (Dkts. 1, 10.)  Discovery began after the Court entered a scheduling order on October 13, 2016, and fact discovery will continue until sixty days after the Court rules on the patent claim construction issues. (Dkt. 49.)  A claim construction hearing is scheduled for October 25, 2017.

Plaintiff has now moved to file a second amended complaint (Dkts. 61, 63), and filed a renewed motion to consolidate this case with a copyright infringement lawsuit against the same corporate entity defendants, Case No. 15-cv-14239.  The initial motion to consolidate was

denied without prejudice on September 29, 2016, with leave to refile in four months.  (Dkt. 51 at 29 (Hr'g Tr.).)  Plaintiff refiled on March 29, 2016.

In the copyright infringement lawsuit, filed on December 3, 2015, plaintiff alleges that defendants infringed the copyright of plaintiff's "Instructions for Use" document included with its CONCEPTION KIT by using the same or substantially similar language in its instruction manual.  Plaintiff filed a first amended complaint in that case on March 2, 2016.  The original scheduling order permitted the parties to amend the pleadings until May 12, 2016.  (Case No. 15-cv-14239, Dkt. 16.) Under the current scheduling order, the cutoff for fact discovery is October 2, 2017, and expert discovery closes February 2, 2018.  (Dkt. 36.)

## II.    Legal Standard

Fed. R. Civ. P. 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires."  But "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (internal citations omitted).  "Delay by itself is not sufficient reason to

deny a motion to amend." *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998) (internal quotation omitted). But "[w]hen combined with [] prejudice . . . there [may be] sufficient grounds . . . to deny the motion." *Id.* "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst., LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

Fed. R. Civ. P. 42(a) governs consolidation of cases, and states that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." "Whether cases involving the same factual and legal questions should be consolidated for trial is a matter within the discretion of the trial court." *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993); *see also Caspar v. Snyder*, 77 F. Supp. 3d 616, 645 (E.D. Mich. 2015) (citing *Cantrell*, 999 F.2d at 1011). "Care must be taken that consolidation does not result in unavoidable prejudice or unfair advantage," and where conservation of judicial resources would be "slight, the risk of prejudice to a party must be viewed with even greater scrutiny." *Cantrell*, 999 F.2d at 1011. Factors a court must consider also include "the burden on parties, witnesses . . . , the length of time required to conclude multiple suits . . . , and the relative

expense to all concerned of the single trial, multiple-trial alternatives."
*Id.* (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495
(11th Cir. 1985)).

## III.   Analysis

Plaintiff seeks to amend the complaint to add Stephen Bollinger, an executive officer of the corporate entity defendants, as a defendant. Plaintiff also seeks to consolidate this case with its copyright case.

### A. Motion to Amend

Defendants argue that plaintiff's motion to amend should be denied because (1) the Court lacks personal jurisdiction over Mr. Bollinger; (2) this Court would be the improper venue over claims against Mr. Bollinger; (3) plaintiff has failed to state a claim so the amendment would be futile; and (4) the motion is brought with undue delay and in bad faith, and would cause undue prejudice.  (Dkt. 66.)

### *Personal Jurisdiction*

In patent cases, a court has personal jurisdiction over an out-of-state party if two conditions are met.  "First, jurisdiction must exist under the forum state's long-arm statute."  *Med. Sols., Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1139 (Fed. Cir. 2008) (citing *Trintec Indus., Inc. v.*

*Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005)).
"Second, the assertion of personal jurisdiction must be consistent with
the limitations of the due process clause." *Id.* Thus, in this case,
Michigan law controls the first inquiry, and federal law, as set forth by
the Supreme Court and Federal Circuit, controls the second. *See id.*

MICH. COMP. LAWS § 600.701 provides for general personal
jurisdiction over an individual if "any of the following relationships"
exists: (1) presence in the state at the time when process is served; (2)
domicile in the state at the time when process is served; or (3) consent."

In this case, Mr. Bollinger's contacts with Michigan do not satisfy
any of these three conditions. Plaintiff also appears to argue that the
Court has general personal jurisdiction over Mr. Bollinger because he
directs the actions of the corporate defendants, which "maintain a
deliberate, systematic business relationship within this District," the
Court has jurisdiction. But that the Court has jurisdiction over the
corporate entity does not give it jurisdiction over a corporate officer by
extension. Instead, as set forth above, the Court must have jurisdiction
pursuant to Michigan's law on general personal jurisdiction over

individuals. Accordingly, the Court lacks general personal jurisdiction over Mr. Bollinger.

MICH. COMP. LAWS § 600.705 provides for limited jurisdiction over individuals if any of the following relationships exist: (1) transaction of any business within the state; [or] (2) doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort."[1]

"Michigan's long-arm statute 'extends to the limits imposed by federal constitutional due process requirements and thus, the [statutory and due process inquiries] become one.'" *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). The exercise of personal jurisdiction comports with due process if "the defendant purposefully established 'minimum contacts' in the forum State." *Nuance Commc'n, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230–31 (Fed. Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

The Federal Circuit uses a three-prong test to assess whether sufficient minimum contacts exist to establish personal jurisdiction: (1) whether the defendant purposefully directed its activities at residents of

---

[1] Additional relationships are set forth in the statute but are not relevant here.

the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair. *3D Sys., Inc. v. Aarotech Labs. Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998).

Here, plaintiff asks the Court to exercise personal jurisdiction over a corporate officer. The Federal Circuit holds that "[t]he fiduciary shield doctrine buffers corporate officers from personal jurisdiction when their official duties were their only contact with a forum state." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012). Thus, any contacts by a corporate officer within the forum state must be done outside of his "role as an officer" to meet the "purposefully directed" prong of the specific jurisdiction test. *3D Sys., Inc.*, 160 F.3d at 1380.

Plaintiff alleges that Mr. Bollinger has sufficient minimum contacts with Michigan because he "purposefully directed the activities of the corporate Defendants in this District" and was "personally involved in Defendants' infringement." (Dkt. 68 at 3; Dkt. 61-2 at 5.) But these actions were taken "in his role as Founder, President, and CEO of the Corporate Defendant organizations," not in his personal capacity. (*See* Dkt. 61-2 at 5 (para. 17).) Further, even if he purchased plaintiff's product on April 14, 2009 in his personal capacity, (Dkt. 61-2 at 6), the

patent in dispute was not issued until 2013. Thus, Mr. Bollinger's purchase could not constitute infringement in his personal capacity. In sum, plaintiff has failed to make any allegations that Mr. Bollinger acted in his personal capacity, and not as a corporate officer, with respect to the alleged patent infringement. And plaintiff has not suggested the Court pierce the corporate veil to reach individual corporate officers. Accordingly, the Court lacks specific personal jurisdiction over Mr. Bollinger with respect to the patent infringement claim. *See 3D Sys., Inc.*, 160 F.3d at 1380–81; *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1459–60 (Fed. Cir. 1997).

Next, defendants argue that the Court lacks personal jurisdiction over Mr. Bollinger with respect to the trademark claim. The law of the Sixth Circuit governs personal jurisdiction with respect to this claim.

In the Sixth Circuit, "personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (internal quotation and citation omitted). "Personal jurisdiction can be either general or specific, depending upon

the nature of the contacts that the defendant has with the forum state." *Id*.

The Michigan statutes on personal jurisdiction set forth above also apply to the trademark claim. And in the Sixth Circuit, to ensure that jurisdiction comports with due process, "the following three criteria must be met: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889–90 (6th Cir. 2002) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Further, where no evidentiary hearing on jurisdiction has been conducted, the plaintiff "need only make a prima facie showing of jurisdiction." *Bird*, 289 F.3d at 871.[2]

---

[2] "An evidentiary hearing may be conducted if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution." *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 770 (E.D. Mich. 2013) (quoting *Amer. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). As set forth below, the allegations are not disputed; instead, the parties dispute whether the allegations are sufficient. Accordingly, the Court declines to exercise its discretion to hold an evidentiary hearing on this issue.

As set forth above with respect to the patent claim, the Court lacks general personal jurisdiction because Mr. Bollinger does not meet any of the statutory criteria under Michigan's long-arm statute.

With respect to limited jurisdiction, plaintiff alleges that Mr. Bollinger served as "Founder, President, and CEO of the Corporate Defendant organizations" and in this role "directed and controlled, and continues to direct and control, Defendants' sales of THE STORK OTC Home Conception Device into Michigan." (Dkt. 63-1 at 4 (para. 10).) Further, Mr. Bollinger was allegedly aware that plaintiff was a Michigan entity, that he "personally directed the Defendants to engage in the alleged activities . . . and specifically directed its employees to do so," and that Mr. Bollinger "was personally involved in the development of Defendants' products; in Defendants' use of Plaintiff's trademark name; and in marketing and promoting Defendants [*sic*] Products." (Dkt. 63-1 at 5, 7.)

Taking the allegations as true, plaintiff has sufficiently alleged that Mr. Bollinger intended to infringe plaintiff's trademark through his control and direction of corporate employees. "With that assumption, [Mr. Bollinger] certainly should have anticipated being haled into court,"

and through this conduct "did, in fact, unfairly injure [a Michigan] corporation." *Amer. Energy Corp. v. Amer. Energy Ptrs.*, Case No. 13-cv-886, 2014 WL 1908290, at *10 (S.D. Ohio May 9, 2014). Thus, his contact with Michigan is "not the result of random, fortuitous, or attenuated contacts, nor the unilateral activity of another party—it is the result of [Mr. Bollinger's] own intentionally tortious conduct purposefully directed to this forum." *Id.* Accordingly, the purposeful availment prong has been met.

Because Mr. Bollinger's alleged contact with Michigan was control of or direction to employees to infringe plaintiff's trademark, the cause of action for trademark infringement directly arises from his contacts with this state. There is therefore a substantial connection between Mr. Bollinger's contacts with Michigan and the cause of action, which satisfies the second prong of the due process analysis. *See Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (courts may exercise personal jurisdiction over "corporate officers who actively and personally involved themselves in conduct violating the Lanham Act").

Once the first two prongs are satisfied, "[a]n inference arises that the third factor is satisfied." *Bird*, 289 F.3d at 875 (internal quotation omitted). Reasonableness is determined by assessing several factors: "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.*

Here, Mr. Bollinger may be burdened by defending in Michigan, but this burden is diminished by the fact that he is represented by the same counsel as the corporate defendants. Michigan's interest in protecting the business interests of its citizens and corporations and plaintiff's legitimate interest in obtaining relief in its home forum also weigh in favor of jurisdiction. *Gen. Motors L.L.C. v. Autel. US Inc.*, Case No. 14-cv-1223357, 2016 WL 1223357, at *6 (E.D. Mich. Mar. 29, 2016). And "[f]inally, because the defendant's alleged actions targeted intellectual property located in Michigan, no other place would be a more appropriate forum to afford an efficient resolution of the conflict." *Id.* Thus, exercising jurisdiction over Mr. Bollinger is reasonable and satisfies the due process inquiry.

Accordingly the Court has personal jurisdiction over Mr. Bollinger with respect to the trademark infringement claims only. The remaining analysis in this opinion is applicable solely to the trademark claims.

### *Venue*

Defendants argue that even if the Court has personal jurisdiction over Mr. Bollinger, the Eastern District of Michigan is the improper venue.

Venue is governed by 28 U.S.C. § 1391, which permits any civil action to be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does,

venue is proper; it if does not, venue is improper." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W.D. Tex.*, ___ U.S. ___, 134 S. Ct. 568, 577 (2013). "Plaintiff bears the initial burden of establishing venue," and once satisfied, "the burden shifts to the defendant to establish that venue is improper." *AlixPartners, LLP v. Brewington*, 133 F. Supp. 3d 947, 961 (E.D. Mich. 2015) (internal quotations and citations omitted).[3]

In this case, because Mr. Bollinger is an out-of-state defendant, venue is proper in the Eastern District of Michigan only if "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" within this district. 28 U.S.C. § 1391(b)(2).

Defendants argue that venue is improper because plaintiff has not alleged any conduct that Mr. Bollinger undertook that occurred in this district. First, the trademark infringement allegedly occurred through online marketing, not through the sale of products with infringing

---

[3] The courts in this district are conflicted as to whether plaintiff or defendant bears the burden when a party objects to venue, and the Sixth Circuit has not addressed it. This Court agrees with the authority that considers improper venue to be an affirmative defense, as opposed to an attack on jurisdiction, and therefore holds that the party raising the defense bears the burden of establishing that the venue is improper. *See Long John Silver's Inc. v. DIWA III, Inc.*, 650 F. Supp. 2d 612, 629–31 (E.D. Ky. 2009) (collecting and analyzing cases and authorities on federal practice).

information.  (Dkt. 66 at 26.)  Second, the corporate defendants' sales into Michigan cannot establish that venue is proper with respect to Mr. Bollinger.  (*Id*.)  Finally, plaintiff was previously headquartered in the Western District of Michigan, and there is no indication that it has any employees in the Eastern District.  (*Id*.)

In trademark cases, "[v]enue is proper . . . where the infringing activity occurred" or "where the passing off occurred."  *Pearle Vision, Inc. v. N.J. Eyes, Inc.*, Case No. 08-cv-190, 2009 WL 73727, at *5 (S.D. Ohio Jan. 6, 2009) (quoting *Nine Pt. Mesa of Nashville, Inc. v. Nine Pt. Mesa of Lexington, Inc.*, 769 F. Supp. 259, 261 (M.D. Tenn. 1991)).

Here, the only way in which plaintiff alleges that defendants violated the trademark was through use of CONCEPTION KIT on their website.  (*See* Dkt. 63-2 at 22–23.)  Nothing in the complaint indicates that the website targeted Michigan consumers, was hosted in or active only in Michigan, or was sufficiently interactive that Mr. Bollinger may have communicated with Michigan purchasers.  To the contrary, plaintiff alleges that the website sold nationwide and to customers in the United Kingdom, which weighs against finding that Michigan is the proper venue, given that the infringing place—the website—was not in

Michigan. Moreover, nothing in the complaint indicates that Mr. Bollinger was involved with the website itself, was involved with it in Michigan, or was involved in targeting Michigan consumers through it. Thus, with respect to Mr. Bollinger, none of the events or omissions at issue occurred in Michigan.

Accordingly, the Eastern District of Michigan is the improper venue for a suit against Mr. Bollinger, and plaintiff's motion to amend to add him as a defendant is denied.

**B. Motion to Consolidate**

Plaintiff also seeks to consolidate this case with its pending copyright infringement lawsuit against the same corporate defendants, Case No. 15-cv-14239. (Dkt. 62.) Plaintiff argues that consolidating the cases is warranted at this time because the cases involve the same parties, involve intellectual property claims related to the same products, plaintiff has the same counsel for each case, and it would promote judicial economy. (Dkt. 62 at 3.) Defendants oppose the motion, arguing that consolidation would not promote judicial economy, would prejudice defendants, and that common questions of fact or law do not predominate. (Dkt. 65 at 1–2.)

### *Common Questions of Law or Fact*

Plaintiff argues that because the two cases involve the same defendants and same products, the cases involve common questions of fact that justify consolidation.  (Dkt. 62 at 16.)  For instance, the "date and circumstances surrounding Defendants' first knowledge of Plaintiff's [product] and related intellectual property rights will be relevant in each case."  (*Id*. at 16–17.)  Defendants argue that common questions do not predominate because each claim is legally distinct and the acts giving rise to them are also distinct.  (Dkt. 65 at 15–18.)

At this stage of the litigation, plaintiff asserts three types of intellectual property claims:   patent, trademark, and copyright infringement.   First, plaintiff argues that the technology used in The Stork OTC Home Conception Device infringes its patent.   Second, plaintiff argues that defendants' website and online marketing violate its trademark "Conception Kit."  Third, plaintiff argues that the language in the "Instructions for Use" manual issued by defendant violates its copyright.

While it is true that each claim is similar in that they all involve intellectual property and the same products, each claim arises from

largely individual facts and entirely different questions of law. The date and circumstances in which defendants learned of each type of intellectual property right asserted by plaintiff are relevant to each case, but there is no reason to believe they will necessarily be the same. Similarly, the way in which defendants allegedly infringed each of plaintiff's intellectual property rights are substantively different.

Furthermore, as set forth above and in a separate opinion and order in Case No. 15-14239, Mr. Bollinger may be added as a defendant only with regard to copyright infringement, and not with regard to the patent and trademark infringement counts. Thus, the cases no longer involve all of the same defendants, and different acts of Mr. Bollinger may be relevant to the copyright infringement count and not to the patent or trademark infringement counts.

Accordingly, common questions of law or fact do not predominate and do not justify consolidation. *See Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459, 460–61 (E.D. Mich. 1985) (denying motion to consolidate where plaintiffs were injured in different ways by same product made by defendant).

*Judicial Economy*

Plaintiff argues that consolidation would promote judicial economy because the parties are the same, at least two witnesses will be the same, and one discovery schedule could be worked out for both parties, which would minimize costs, the production burden, and disputes. (Dkt. 62 at 18–22.) Defendants argue that consolidation would not significantly promote judicial economy because the parties already have a document-sharing agreement in place and agreed to single depositions of key fact witnesses. (Dkt. 65 at 19–21.)

The burden on the parties and witnesses may be slightly greater if consolidation is denied, but not significantly. Plaintiff has identified only two witnesses in common to both lawsuits, Mr. La Vean, principal of Conceivex, and Mr. Bollinger. And the parties have already stipulated to a single deposition for both cases for these witnesses. (Dkt. 65 at 21.) Although these individuals may have to testify in both cases, given the nature and timing of these suits, described in more detail below, the burden likely will not be much greater due to the way in which each case has proceeded.

The copyright case has been pending for nearly two years and discovery has been ongoing since April 2016. The patent and trademark case has been pending for over one year and discovery has been ongoing since October 2016. Each case has been proceeding since then with its own discovery schedule, and will likely continue to diverge in terms of timing. For example, the Court is required to hold a Markman hearing regarding plaintiff's patent claim, which may significantly delay the resolution of the patent and trademark case. Currently, fact discovery will end in the copyright matter October 2, 2017. By contrast, in the patent case, fact discovery will continue until sixty days after the Court issues a claim construction hearing. The hearing is scheduled for October 25, 2017. Thus, consolidating the cases would not meaningfully lessen the burden on the parties or the Court with respect to discovery and other pretrial matters.

Furthermore, as discussed above, the legal claims brought implicate different acts of defendants, and although discovery related to the development of the products may be the same for both cases, consolidation likely would not minimize the production burden and

expenses of the parties, given that different facts will be needed to prove patent, trademark, and copyright infringement.

Consolidation would allow the Court to hold a single trial, instead of two separate trials. But given the volume of documents and differing facts that the parties need to prove or defend against each claim, it is unclear whether consolidation would substantially reduce trial costs. One significantly longer trial may not outweigh two shorter trials. Moreover, as set forth above, the cases have been proceeding on different timetables and consolidation would not resolve substantive issues that require the claims to move at different speeds, particularly the patent claim. In sum, the savings to the judicial system appear to be uncertain, and, at best, minimal.

### *Prejudice to Defendants*

Defendants argue that they will be prejudiced by consolidation because (1) it will force their separate counsel for each case to coordinate at every step, and (2) plaintiff could misuse evidence from one case to prejudice the jury regarding the other claims. (Dkt. 62 at 22–24.) Plaintiff argues that defendants will suffer no prejudice, and that the risk

of inconsistent adjudication of common facts and inefficiencies of two lawsuits outweighs any prejudice. (Dkt. 69 at 5.)

Here, defendants will not suffer undue prejudice. That their counsel must coordinate, as they are in many aspects already, is insufficient to justify denial. Further, while it may be that evidence related to one claim may influence a jury's beliefs on another claim, *see, e.g.*, *Hasman*, 106 F.R.D. at 461, any "risk of prejudice may be overcome through the use of carefully prepared interrogatories on the verdict form." *Van Emon v. State Farm Mut. Auto. Ins. Co.*, Case No. 05-cv-72638, 2008 WL 2478343, at *2 (E.D. Mich. June 17, 2008) (citing *Stemler v. Burke*, 344 F.2d 393, 396 (6th Cir. 1965)).

As set forth above, plaintiff overstates the common questions of fact at issue in these cases and the extent to which consolidation would promote judicial economy. Accordingly, this final factor does not weigh in favor of either party.

In considering each of the above factors, the Court finds that they weigh against consolidation, especially given that plaintiff could have filed one lawsuit or amended its initial complaint to add the patent and

trademark claims, but instead chose to file a new lawsuit. Accordingly, plaintiff's renewed motion to consolidate is denied.

## IV.  Conclusion

For the reasons set forth above, plaintiff's motion to amend (Dkts. 61, 63) is DENIED.

Plaintiff's renewed motion to consolidate (Dkt. 62) is DENIED.

IT IS SO ORDERED.

Dated: August 15, 2017
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 15, 2017.

s/Shawna Burns
SHAWNA BURNS
Case Manager